UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-4 TALAL KHALIL CHAHINE,

    Defendant.
_____/

CRIMINAL NO. 07-20156

HON. AVERN COHN

VIO. 18 U.S.C. § 371

## FIRST SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

### General Allegations

1. On June 24, 1989, Nada Nadim Prouty, also known as "Nada Nadim Alley," also known as "Nada Nadim Deladurantaye," also known as "Nada Nadim Al Aouar," first entered the United States from Lebanon on a one year non-immigrant student visa.

2. After Nada Nadim Prouty's visa expired on June 11, 1990, she remained in the country residing in Taylor, Michigan with her sister, Elfat Nadim El Aouar, also known as "Elfat Nadim Wymer," also known as "Elfat Chahine," and Samar Khalil Nabbouh, also known as "Samar Khalil Deladurantaye," also known as "Samar Khalil Spinelli."

3. On an unknown date between June 11, 1990, and August 9, 1990, while having overstayed her visa, Nada Nadim Prouty, then known as "Nada Nadim Al

Aouar," offered money to an unemployed United States citizen to marry her, expressly for the purpose of remaining in the United States and evading U.S. immigration laws.

4. On August 9, 1990, Nada Nadim Prouty, then known as "Nada Nadim Al Aouar," married the U.S. citizen in a civil ceremony in Detroit, Michigan. As planned, Nada Nadim Prouty, known as "Nada Nadim Deladurantaye" after the marriage ceremony, never lived as husband and wife with her fraudulent "husband" and the marriage was never consummated sexually. Rather, she continued to live with Elfat Nadim El Aouar and Samar Khalil Nabbouh. (Elfat Nadim El Aouar and Samar Khalil Nabbouh also entered into fraudulent marriages in 1990 in coordination with Nada Nadim Prouty.)

5. Between August 29, 1990 and May 31, 1994, Nada Nadim Prouty, then known as "Nada Nadim Deladurantaye," submitted a series of written statements under oath to immigration authorities purporting to verify the validity of the fraudulent marriage.

6. On November 16, 1992, TALAL KHALIL CHAHINE, defendant herein, wrote a letter for submission into defendant's immigration file attesting to the validity of the marriage and falsely stating that he knew Nada Nadim Prouty, then known as "Nada Nadim Deladurantaye," and her husband "in a professional and a personal manner" and inviting further contacts so that defendant could vouch for the couple.

7. On November 16, 1992, Nada Nadim Prouty's boyfriend, at Prouty's (then Deladurantaye's) request, also wrote a letter for submission into her immigration file

falsely claiming that Deladurantaye and her "husband" resided together and that the boyfriend was "good friends" with the husband.

8. On November 23, 1992, Nada Nadim Prouty forged the signature of her fraudulent husband on Form I-751, Petition to Remove the Conditions on Residence under penalty of perjury and just below a certification that the marriage "was not for the purpose of procuring an immigration benefit."

9. On August 5, 1994 Nada Nadim Prouty procured her United States citizenship under the name "Nada Nadim Deladurantaye." (Samar Khalil Nabbouh and Elfat Nadim El Aouar also obtained their U.S. citizenship in 1994 and 1995 respectively, in coordination with Nada Nadim Prouty utilizing the same fraudulent methods.)

10. On January 17, 1995, Nada Nadim Prouty caused to be filed in the Wayne County, Michigan, Circuit Court a Complaint for Divorce wherein she falsely alleged that she and her fraudulent husband "lived and cohabited together as husband and wife until on or about December 15, 1994."

11. At all times relevant to this Indictment, La Shish, Inc. was a chain of Middle Eastern restaurants located in the Detroit, Michigan metropolitan area owned by TALAL KHALIL CHAHINE, defendant herein. From May 1992 through April 1993, and again from August through November 1994, Nada Nadim Prouty, then known as "Nada Nadim Deladurantaye," was employed at La Shish, Inc. as a waitress and hostess.

12. On or about April 21, 1999, through a series of false representations and

use of her fraudulently procured proof of U.S. citizenship, Nada Nadim Prouty, then known as "Nada Nadim Alley," obtained employment with the United States Department of Justice as a Special Agent for the Federal Bureau of Investigation (FBI). During all times material to this Indictment, it was a prerequisite to FBI employment that one be a United States citizen.

13. As a Special Agent, Nada Nadim Prouty, then known as "Nada Nadim Alley," was granted a security clearance and assigned to the FBI's Washington Field Office (WFO) to work on an extraterritorial squad investigating crimes against U.S. persons overseas. During her tenure with the FBI, Prouty (then Alley) was not assigned to work on investigations involving the international terrorist group Hizballah.

14. On August 22, 2000, TALAL KHALIL CHAHINE, defendant herein, entered into a marriage with Nada Nadim Prouty's sister, Elfat Nadim El Aouar, under the tenets of Shia Islam.

15. On or about September 19, 2000, while employed as an FBI Special Agent at WFO, Nada Nadim Prouty, then known as "Nada Nadim Alley," utilized the FBI's computerized Automated Case System (ACS) without authorization, and beyond her authorized access, to query her own name, her sister Elfat Nadim El Aouar's name, and the name of her brother-in-law, TALAL KHALIL CHAHINE, defendant herein. During all times material to this Indictment, the use of the FBI's ACS system was limited to official business.

16. At all times material to this Indictment, it was contrary to FBI policy and

procedures for an FBI agent to take classified information home. During her tenure with the FBI, Nada Nadim Prouty, then known as "Nada Nadim Alley," violated FBI policy and took an unknown quantity of classified information home with her.

17. In August 2002, TALAL KHALIL CHAHINE, defendant herein, and Elfat Nadim El Aouar attended a fund raising event in Lebanon. The keynote speakers for the event were TALAL KHALIL CHAHINE, defendant herein, and Sheikh Muhammad Hussein Fadlallah, not named as a defendant herein. Sheikh Fadlallah had previously been designated by the U.S. Department of Treasury's Office of Foreign Asset Control as a Specially Designated Global Terrorist based upon his status as a leading ideological figure with Hizballah.

18. Under the Anti-Terrorism and Effective Death Penalty Act, the United States Secretary of State is empowered to designate groups as a foreign terrorist organization (FTO). 8 U.S.C. § 1189(a)(1). Entities are designated as FTOs if the Secretary finds (A) the organization is a foreign organization; (B) the organization engages in terrorist activity; and (C) the terrorist activity of the organization threatens the security of United States nationals or the national security of the United States. Effective October 8, 1997, then U.S. Secretary of State Madeleine Albright designated as a foreign terrorist organization Hizballah, also known as "Party of God," also known as "Islamic Jihad," also known as "Islamic Jihad Organization," also known as "Revolutionary Justice Organization," also known as "Organization of the Oppressed on Earth," also known as "Islamic Jihad for the Liberation of Palestine," also known as "Organization of Right Against Wrong," also known as

"Ansar Allah," also known as "Followers of the Prophet Muhammad."

19. Hizballah is a worldwide terrorist organization centered in the south of Lebanon, composed of Shiite Muslims, dominated by and allied with Iran, and headed by its Secretary General Hassan Nasrallah. Hizballah's ideological basis derives from the Islamic fundamentalism expressed by the Ayatollah Khomeini of Iran. Hizballah's goals include the eradication of "western imperialism" from the Middle East represented in part by the United States ("the Great Satan") and Israel ("the little Satan"). Hizballah is an avowed enemy of the United States. According to Secretary General Hassan Nasrallah, Hizballah seeks "death to America."

20. Hizballah has conducted numerous high profile terrorist attacks, including the murder of 241 American servicemen in their sleep during a suicide bombing of the U.S. Marine Corps' barracks in Beirut, Lebanon on October 23, 1983 and the kidnapping, torture and murder of U.S. Marine Corps Lieutenant Colonel William R. Higgens from February 17, 1988 through July 1989. Sheikh Muhammad Hussein Fadlallah, Hizballah's chief "spiritual leader," issued the fatwa (religious ruling) authorizing the Marine Corps' barracks bombing.

21. On or about June 29, 2003, through a series of false representations and use of her fraudulently procured proof of U.S. citizenship, Nada Nadim Prouty, then as now known as "Nada Nadim Prouty," voluntarily left her position with the FBI and obtained employment with the Central Intelligence Agency (CIA). During all times material to this Indictment, it was a prerequisite to CIA employment that one be a United States citizen.

22. On or about, June 16, 1995, Nada Nadim Prouty obtained a U.S. Passport based upon her fraudulently obtained U.S. Citizenship, and thereafter renewed it when required.

23. At various times between September 9, 1998 and July 12, 2007, Nada Nadim Prouty traveled to, from and outside the United States on a U.S. Passport.

## COUNT ONE
### (Conspiracy – 18 U.S.C. § 371)

D-4 TALAL KHALIL CHAHINE

The general allegations set forth above are hereby incorporated by reference as if fully set forth herein.

From on or about April 10, 1990 through the date of this Indictment, within the Eastern District of Michigan, Southern Division, and elsewhere, TALAL KHALIL CHAHINE, defendant herein, conspired and agreed together with Nada Nadim Prouty, Elfat Nadim El Aouar, and others both known and unknown to the Grand Jury:

1) to defraud the United States of valuable benefits of U.S. citizenship including U.S. passports and U.S. government employment; and

2) to commit the following offenses against the United States:

   a. Marriage Fraud in violation of 8 U.S.C. § 1325(c);

   b. Naturalization Fraud in violation of 18 U.S.C. § 1425(a);

   c. Perjury in violation of 18 U.S.C. § 1546;

   d. False Statements Under Oath in Naturalization Proceedings

in violation of 18 U.S.C. § 1015(a);

e. Use of Fraudulently Procured Proof of U.S. Citizenship
in violation of 18 U.S.C. § 1015(c);

f. False Statements to Government Agents
in violation of 18 U.S.C. § 1001;

g. Use of Fraudulently Procured U.S. Passports
in violation of 18 U.S.C. § 1542; and

h. Unauthorized Computer Access
in violation of 18 U.S.C. § 1030(a)(2)(B).

## Ways, Manner and Means

The ways, manner and means of the conspiracy are described as follows.

It was part of the conspiracy that Nada Nadim Prouty, Elfat Nadim El Aouar, and other co-conspirators, entered the United States from Lebanon on a non-immigrant student or visitor visa.

It was further a part of the conspiracy that Nada Nadim Prouty, Elfat Nadim El Aouar, and other co-conspirators, overstayed their non-immigrant visas or otherwise failed to depart the United States as scheduled on their visa.

It was further a part of the conspiracy that the alien members of the conspiracy, including Nada Nadim Prouty, Elfat Nadim El Aouar and other co-conspirators, with the assistance of one another, located U.S. citizens willing to marry them in exchange for money.

It was further a part of the conspiracy that Nada Nadim Prouty, Elfat Nadim El Aouar, and other co-conspirators, entered into marriages with the hired U.S. citizens in name only, having no intention of living together as husband and wife and solely

for purposes of evading U.S. immigration laws.

It was further a part of the conspiracy that Nada Nadim Prouty, Elfat Nadim El Aouar, and other co-conspirators, caused their U.S. citizen husbands to sign immigration documents under oath verifying the validity of the fraudulent marriages and falsely claiming to be residing with their wives.

It was further a part of the conspiracy that Nada Nadim Prouty, Elfat Nadim El Aouar, and other co-conspirators, resided together at the same address both before and after their marriage ceremonies.

It was further a part of the conspiracy that Nada Nadim Prouty, Elfat Nadim El Aouar, and other co-conspirators, in coordination with one another, solicited falsified letters from individuals including TALAL KHALIL CHAHINE, defendant herein, claiming to know their fraudulent husbands and purporting to verify the legitimacy of the fraudulent marriages.

It was further a part of the conspiracy that Nada Nadim Prouty, Elfat Nadim El Aouar, and other co-conspirators, in coordination with one another, forged letters by real or fictional individuals purporting to verify the legitimacy of the fraudulent marriages.

It was further a part of the conspiracy that Nada Nadim Prouty, Elfat Nadim El Aouar, and other co-conspirators, in coordination with one another, forged the signatures of their fraudulent husbands on official immigration documents.

It was further a part of the conspiracy that TALAL KHALIL CHAHINE, defendant herein, Elfat Nadim El Aouar, and other co-conspirators, served as

references to backstop any inquiries into their fraudulent marriages.

It was further a part of the conspiracy that Nada Nadim Prouty, Elfat Nadim El Aouar, and other co-conspirators, obtained documentation permitting them to permanently live and reside in the United States.

It was further a part of the conspiracy that Nada Nadim Prouty, Elfat Nadim El Aouar, and other co-conspirators, traveled internationally in and out of the United States once they had obtained permission to permanently live and reside in the United States.

It was further a part of the conspiracy that Nada Nadim Prouty, Elfat Nadim El Aouar, and other co-conspirators, obtained United States citizenship and naturalization certificates as proof of their citizenship.

It was further a part of the conspiracy that Nada Nadim Prouty, Elfat Nadim El Aouar, and other co-conspirators, in coordination with one another, divorced their fraudulent U.S. citizen husbands shortly after obtaining their naturalization certificates.

It was further a part of the conspiracy that Nada Nadim Prouty, Elfat Nadim El Aouar, and other co-conspirators, in coordination with one another, caused documents containing false statements attesting to the validity of the marriages to be submitted to the Wayne County (Michigan) Circuit Court to effectuate divorce proceedings. Like the marriages and immigration file submissions, the divorces were coordinated, timed, and scripted, utilizing the same mailing address and the same attorney.

It was further a part of the conspiracy that Nada Nadim Prouty, Elfat Nadim El Aouar, and other co-conspirators, utilized their naturalization certificates to obtain U.S. passports permitting them to travel internationally as U.S. citizens.

It was further a part of the conspiracy that Nada Nadim Prouty, Elfat Nadim El Aouar, and other co-conspirators, utilized their U.S. passports to travel to various countries around the world as U.S. citizens.

It was further a part of the conspiracy that Nada Nadim Prouty and Samar Khalil Spinelli, also known as "Samar Khalil Nabbouh," utilized their naturalization certificates and U.S. passports, as proof of their U.S. citizenship, to obtain U.S. government employment only available to U.S. citizens, including employment as a Special Agent of the Federal Bureau of Investigation, an employee of the Central Intelligence Agency, and a commissioned officer in the U.S. Marine Corps.

It was further a part of the conspiracy that Nada Nadim Prouty and Samar Khalil Spinelli, also known as "Samar Khalil Nabbouh," utilized their naturalization certificates and U.S. passports, as proof of their U.S. citizenship, to obtain security clearances and access to sensitive U.S. government secrets, sources and methods not otherwise available to them.

It was further a part of the conspiracy that Nada Nadim Prouty and Samar Khalil Spinelli, also known as "Samar Khalil Nabbouh," would use their positions and access to sensitive U.S. government secrets, sources and methods to the advantage of other co-conspirators.

## Overt Acts

In furtherance of the conspiracy, and to effect the objects thereof, TALAL KHALIL CHAHINE, defendant herein, and his co-conspirators committed and caused to be committed the following overt acts, among others, in the Eastern District of Michigan and elsewhere:

1. While applying for employment with the Federal Bureau of Investigation, on or about April 21, 1997, Nada Nadim Prouty, then known as "Nada Nadim Alley," signed Form FD-140 stating that her divorce from her first marriage was due to "irreconcilable differences."

2. While applying for employment with the Federal Bureau of Investigation, on or about April 21, 1997, Nada Nadim Prouty, then known as "Nada Nadim Alley," signed Form FD-140 referencing her naturalization certificate number as proof of her U.S. citizenship.

3. While applying for employment with the Federal Bureau of Investigation, on or about April 21, 1997, Nada Nadim Prouty, then known as "Nada Nadim Alley," signed Form FD-140 referencing the naturalization certificate number of her sister Elfat El Aouar, as proof of her sister's U.S. citizenship.

4. While applying for employment with the Federal Bureau of Investigation, on or about April 21, 1997, Nada Nadim Prouty, then known as "Nada Nadim Alley," signed Form FD-140 listing her sister, Elfat Nadim El Aouar, as a reference.

5. While applying for employment with the Federal Bureau of Investigation, on or about April 21, 1997, Nada Nadim Prouty, then known as "Nada Nadim Alley,"

signed Form FD-140 listing Samar Khalil Spinelli, also known as "Samar Khalil Nabbouh," as a reference.

6. While applying for employment with the Federal Bureau of Investigation, on or about April 21, 1997, Nada Nadim Prouty, then known as "Nada Nadim Alley," signed Form FD-140 stating that she was not "aware of any information about [her]self or any person with whom [she is or has] been closely associated (including relatives and roommates) which might tend to reflect unfavorably on [her] reputation, morals [or] character . . . ."

7. On or about September 11, 1998, Nada Nadim Prouty, then known as "Nada Nadim Alley," told FBI Special Agent John Camera that she was concealing no matters in her background which could be used for purposes of pressuring or influencing her.

8. On or about October 7, 1998, Elfat Nadim El Aouar was interviewed by the FBI as part of defendant Nada Nadim Prouty's (then Nada Nadim Alley's) background check, providing no derogatory information to the FBI notwithstanding her knowledge of Nada Nadim Prouty's fraudulent marriage, naturalization fraud and participation in this conspiracy.

9. On or about October 13, 1998, Samar Khalil Spinelli, also known as "Samar Khalil Nabbouh," told an FBI Special Agent that she was not aware of any activity or conduct in the background of Nada Nadim Prouty, then known as "Nada Nadim Alley," which could be used in any way to subject Prouty to influence, pressure, coercion or compromise, or which would negatively reflect upon Prouty's character,

notwithstanding her knowledge of Nada Nadim Prouty's fraudulent marriage, naturalization fraud and participation in this conspiracy.

10. On or about October 15, 1998, TALAL KHALIL CHAHINE, defendant herein, told an FBI Special Agent that he was not aware of any activity or conduct in the background of Nada Nadim Prouty, then known as "Nada Nadim Alley," which could be used in any way to subject Prouty's to influence, coercion or compromise, or which would negatively reflect upon her character, notwithstanding defendant's knowledge of Nada Nadim Prouty's fraudulent marriage, naturalization fraud and participation in this conspiracy.

11. On or about April 3, 2002, Nada Nadim Prouty, while employed as a Special Agent with the Federal Bureau of Investigation, accessed the FBI's Automated Case Support (ACS) computer system and obtained information from case file number WF-215591, serial 83, which referenced an identification number for a classified human source of information utilized by the FBI's Detroit Field Office in one or more national security investigations concerning the designated foreign terrorist organization, Hizballah, without authorization and in excess of her authorized access within the ACS system.

12. On or about October 29, 2002, Nada Nadim Prouty, while employed as a Special Agent with the Federal Bureau of Investigation, accessed the FBI's Automated Case Support (ACS) computer system and obtained information from case file number DE-84485, serial 1030, a national security investigation conducted by the FBI's Detroit Field Office concerning the designated foreign terrorist organization,

Hizballah, without authorization and in excess of her authorized access within the ACS system.

13. On or about June 2, 2003, Nada Nadim Prouty, while employed as a Special Agent with the Federal Bureau of Investigation, accessed the FBI's Automated Case Support (ACS) computer system and obtained information from case file number WF-215591, a national security investigation concerning the designated foreign terrorist organization, Hizballah, that utilized a classified human source of information from the FBI's Detroit Field Office, without authorization and in excess of her authorized access within the ACS system.

14. On or about June 4, 2003, Nada Nadim Prouty, while employed as a Special Agent with the Federal Bureau of Investigation, accessed the FBI's Automated Case Support (ACS) computer system and obtained information from case file number DE-74791, a national security investigation conducted by the FBI's Detroit Field Office concerning the designated foreign terrorist organization, Hizballah, without authorization and in excess of her authorized access within the ACS system.

15. On or about June 4, 2003, Nada Nadim Prouty, while employed as a Special Agent with the Federal Bureau of Investigation, accessed the FBI's Automated Case Support (ACS) computer system and obtained information from case file number WF-215591, a national security investigation concerning the designated foreign terrorist organization, Hizballah, that utilized a classified human source of information from the FBI's Detroit Field Office, without authorization and in excess

of her authorized access within the ACS system.

16. While applying for employment with the Central Intelligence Agency (CIA), on or about February 15, 2003, Nada Nadim Prouty, signed Form SF-86 referencing her naturalization certificate number as proof of her U.S. citizenship.

17. While applying for employment with the CIA, on or about February 15, 2003, Nada Nadim Prouty, signed Form SF-86 referencing her fraudulent marriage and identifying her fraudulent husband as a former "spouse."

18. While applying for employment with the CIA, on or about February 15, 2003, Nada Nadim Prouty, signed Form SF-86 referencing the naturalization certificate number of her sister, Elfat El Aouar, as proof of El Aouar's U.S. citizenship.

19. On May 24, 2007, Nada Nadim Prouty told FBI Special Agents that she knew of no derogatory information about her brother-in-law, TALAL KHALIL CHAHINE, defendant herein.

20. On May 24, 2007, Nada Nadim Prouty falsely claimed not to have used the FBI's Automated Case Support (ACS) computer system to access a Hizballah investigation in the name of "Talal Chahine."

All in violation of Title 18, United States Code, Section 371.

A TRUE BILL.

*Eunice Bickel Smith*
Foreperson

Dated: 12/5/07

STEPHEN J. MURPHY
United States Attorney

ERIC M. STRAUS
Chief, National Security Unit

KENNETH R. CHADWELL
Assistant United States Attorney

MARK J. JEBSON
Special Assistant U.S. Attorney

| United States District Court Eastern District of Michigan | Criminal Case Cover Sheet | Case Number 07-20156 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

### Companion Case Information

| | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes   ☒ No | AUSA's Initials: KRC |

Case Title: USA v. Talal Khalil Chahine

County where offense occurred: Wayne

Check One:   ☒ Felony   ☐ Misdemeanor   ☐ Petty

__X__ Indictment/____ Information --- no prior complaint.
____ Indictment/____ Information --- based upon prior complaint [Case number: ]
____ Indictment/____ Information --- based upon LCrR 57.10 (d) [Complete Superseding section below].

### Superseding Case Information:

Superseding to Case No: 07-20156      Judge: Cohn

☐  Original case was terminated; no additional charges or defendants.
☐  Corrects errors; no additional charges or defendants.
☐  Involves, for plea purposes, different charges or adds counts.
☒  Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** |
|---|---|
| D-4   Talal Khalil Chahine | 18 U.S.C. § 371 |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

December 5, 2007
Date

Kenneth R. Chadwell
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: (313) 226-9698
Fax: (313) 226-3413
E-Mail address: ken.chadwell@usdoj.gov
Attorney Bar #: P39121

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

5/20/04